IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARTASH PRINTING, INC.,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-498 |
| | : | |
| **THE MORTGAGE PRESS, LTD.,** | : | |
| Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                    **May 28, 2009**

A New York corporation who contracted with a Pennsylvania corporation moves to dismiss a suit arising from that agreement for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3).  For the reasons that follow, I will deny the motion.

**I. Background**

Bartash Printing, Inc. (Bartash) is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.  (Compl. ¶ 1.)  The Mortgage Press, Ltd. (Mortgage Press) is a New York corporation with its principal place of business in Wantagh, New York.  (Id. ¶ 2.)  Mortgage Press has no physical presence in Pennsylvania.  (Def.'s Mot. to Dismiss ¶ 5 (Document #3).)

On or around January 2006, Bartash began to perform printing services for Mortgage Press.[1]  (Compl. ¶ 5.)  This included printing, mailing and delivering the

---

[1] Exhibit 3 to the plaintiff's Opposition Memorandum (Pl.'s Opp'n Mem. (Document #5)) is a December 2005 printing agreement signed by the presidents of both companies.

publications. (Id.) All printing was performed on Bartash's premises in Pennsylvania. (Pl.'s Opp'n Mem. at 3.) Mortgage Press would send an electronic version of each publication as well as a mailing list. (Id. at 3–4.)

On June 23, 2006, Michael Karff, a Bartash sales representative, met with three Mortgage Press representatives at the Pennsylvania Convention Center. (Karf Aff. ¶ 3, Apr. 9, 2009.) The Mortgage Press representatives were in Philadelphia to attend a conference of the National Association of Mortgage Brokers and requested the meeting with Bartash. (Id. ¶¶ 3, 5.) The parties discussed printing issues, and Mr. Karff delivered copies of Mortgage Press' publications for the company to distribute at the conference. (Id. ¶ 3.)

Payment was to be pursuant to the terms of Bartash's standard form invoices. (Compl. ¶ 6.) Edward C. Yucis, general manager at Bartash, attests that several payments were made and mailed to Bartash's Philadelphia address. (Yucis Aff. ¶ 17, Apr. 9, 2009.) Approximately 110 invoices, however, remain outstanding.[2] (Compl. ¶ 8.) As of January 27, 2009, the amount owed to Bartash was "$128,136.59, plus interest at the rate of 18% per annum." (Id. ¶ 12.)

## II. Applicable law

### A. Motion to dismiss for lack of personal jurisdiction

Under Rule 12(b)(2), the burden is on the plaintiff to prove that jurisdiction exists over the defendant in the forum state. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 257

---

[2] Bartash attached these past due invoices to the Complaint as Exhibit A.

(3d Cir. 1998).  A court must construe all facts in the light most favorable to the plaintiff in deciding if personal jurisdiction exists.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  "At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of jurisdiction; once the motion is made, the plaintiff must respond with actual proofs not mere allegations."  Patterson v. Federal Bureau of Investigation, 893 F.2d 595, 603-04 (3d Cir. 1990).

Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to exercise personal jurisdiction over a non-resident defendant to the extent allowed by the long-arm statute of the state in which the court sits.  Provident Nat'l Bank v. Cal. Fed. Sav. and Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987).  Pennsylvania's long-arm statute establishes personal jurisdiction over a non-resident defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001); see also 42 PA. CONS. STAT. ANN. § 5322(b) (2008).  This inquiry under the Due Process Clause requires analyzing the relationship between the defendant, the forum, and the litigation.  Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

Personal jurisdiction may be exercised under two separate theories: general jurisdiction and specific jurisdiction.  General jurisdiction exists where a defendant has had continuous and systematic contacts with the forum state.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  Specific jurisdiction exists where the plaintiff's cause of action arises out of the defendant's contacts with the

forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The constitutional test for specific jurisdiction consists of two parts.  First, the defendant must have had constitutionally sufficient "minimum contacts" with the forum state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The inquiry is focused on whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)); see also World-Wide, 444 U.S. at 297 (stating that the contacts should be of a degree and quality that the defendant "should reasonably anticipate being haled into court there").

If the defendant's contacts are constitutionally sufficient, the inquiry shifts to considering whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v.  Washington, 326 U.S. 310, 320 (1945).  The court should consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."  World-Wide, 444 U.S. at 292 (citations omitted).

**B. Motion to dismiss for improper venue**

A motion to dismiss pursuant to Rule 12(b)(3) seeks the dismissal or transfer of a case for improper venue. For diversity jurisdiction actions, 28 U.S.C. § 1391(a) provides

that venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." Assuming the action is brought in a proper venue, the plaintiff's choice of forum prevails unless the defendant demonstrate that the balance of the parties' convenience and the interests of justice weigh in his or her favor. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).

**III. Discussion**

    **A. This court may exercise personal jurisdiction over Mortgage Press**

Bartash proceeds on a specific jurisdiction theory. Pennsylvania law extends jurisdiction over any non-resident "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Consequently, the personal jurisdiction analysis over a non-resident defendant under Pennsylvania law collapses into a single inquiry under the two-part test of determining whether (1) the defendant's "minimum contacts" are constitutionally sufficient and (2) exercising jurisdiction comports with traditional notions of "fair play and substantial justice."

        **1. Minimum contacts**

Mortgage Press has had sufficient contacts with Pennsylvania for this court to exercise jurisdiction. The fact that a non-resident has contracted with a resident is insufficient by itself to justify exercising personal jurisdiction over the non-resident. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (1992). "The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." Id. (citing Burger King, 471 U.S. at 479). Even where there have been no physical contacts with the forum state, personal jurisdiction may still be exercised "[w]hen a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident." Id. at 1225; see also General Elec. Co. v. Deutz AG, 270 F.3d 144, 150–51 (3d Cir. 2001) ("In modern commercial business engagements . . . communications by electronic facilities, rather than physical presence, is the rule.").

The seminal decision for these contract-based personal jurisdiction cases is Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). In Burger King, the Court considered whether a federal district court in Florida had personal jurisdiction over a Michigan resident. The defendant had entered into a contract with the Burger King corporation (a Florida resident) to open a Burger King franchise in Michigan. Id. at 466. When the defendant fell behind on his franchise payments, Burger King brought suit in a federal district court in Florida.

Though the defendant had no physical presence in the forum state, the Court found

personal jurisdiction existed.  By seeking a franchise, the defendant had reached out from Michigan and knowingly negotiated and contracted with a Florida corporation.  Id. at 479–80.  The defendant's contacts with Florida were more than "fortuitous" or "attenuated" as the contract provided for a long-term relationship consisting of "continuing and wide-reaching contacts with Burger King in Florida."  Id. at 480.  For these reasons, personal jurisdiction existed over this non-resident defendant.  Cf. Mellon Bank, 960 F.2d at 1223 (finding the exercise of personal jurisdiction to be proper where non-residents had sought a loan from a bank in the forum state, sent payments to the bank's address in the forum, and sent documentation to the forum seeking extension of repayment for the obligations).

     Here, I find that Mortgage Press had sufficient contact with Pennsylvania to exercise jurisdiction.  Mortgage Press entered into a long-term business agreement with Bartash, a Pennsylvania company, to have specific services performed in Pennsylvania.  During the course of this relationship, Bartash produced at least thirty-seven distinct publications for Mortgage Press' benefit.  (See Compl. Ex. B (statement of printing services).)  Mortgage Press sent Bartash electronic versions of each publication.  (Pl.'s Opp'n Mem. at 7.)  It also sent electronic copies of the mailing lists for each publication.  (Id. at 8.)  Several payments were also mailed to Bartash's Pennsylvania address.  (Yucis Aff. ¶ 17.)

     Though it is unclear whether Bartash or Mortgage Press initiated the discussions for the agreement, that factor is not wholly controlling.  Rather than setting forth any

talismanic language for when personal jurisdiction arises out of a contract, the Third Circuit's decisions suggest a fact-driven, case-specific analysis is more appropriate. See, e.g., Mesalic v. Fiberfloat Corp., 897 F.2d 695 (3d Cir. 1990) (finding the exercise of personal jurisdiction to be proper in where the plaintiff initiated negotiations to purchase a boat from a non-resident, and the non-resident sent several letters to the plaintiff, delivered the vessel to the plaintiff's residence, and sent representatives to repair the boat on two separate occasions); N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687 (3d Cir. 1990) (finding the exercise of personal jurisdiction to be proper where the defendant entered into a long-term service agreement with the plaintiffs, received benefits under the agreement in the forum state, and sent payments to the forum state, and making no finding as to which party initiated the agreement negotiations); see also General Elec., 270 F.3d at 151 ("Its is not significant that one or the other party initiated the relationship." (citing Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)). As discussed above, the totality of Mortgage Press' activities demonstrates it purposefully availed itself of the privilege of doing business in Pennsylvania by engaging in continuing communications with Bartash, remiting payments to Bartash through the mails, sending electronic copies of each publication to be printed, and receiving the benefits of Bartash's printing and mailing services, which were performed in Pennsylvania.

### 2. Fair play and substantial justice

The court must next consider whether exercising personal jurisdiction over the

defendant comports with the "traditional notions of fair play and substantial justice." Int'l Shoe. Where the defendant has purposefully directed its activities to the forum state, it must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

I find that this part of the test is also satisfied. Mortgage Press has presented no argument as to why jurisdiction would be unreasonable in this district. (See generally Def.'s Mot. to Dismiss (presenting no arguments on this part of the specific jurisdiction test).) Bartash's injury occurred in Pennsylvania, and Pennsylvania undoubtedly has an interest in protecting its corporations from breaches of contract. The hardship to Mortgage Press is not overwhelming. As evidenced by the June 23, 2006 meeting at the Pennsylvania Convention Center, Mortgage Press has the ability to return to the forum.

**B. Venue is proper in this district**

I will deny the motion with respect to the improper venue argument. Venue is proper in a judicial district where any defendant resides. 28 U.S.C. § 1391(a). Section 1391 further provides that a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." If the State has more than one judicial district, "[the] corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." Id. § 1391(c).

Here, Bartash's action arises out of Mortgage Press' failure to pay the printing

invoices.  As discussed above, personal jurisdiction is proper in this district because (1) Mortgage Press contracted for services to be performed in Philadelphia, Pennsylvania; (2) Mortgage Press sent payments to Bartash's office in Philadelphia; and (3) Mortgage Press sent electronic copies of the individual publications and mailing lists to Bartash. Consequently, venue is proper in this district.

**IV. Conclusion**

For the foregoing reasons, I will deny the motion to dismiss.  An appropriate Order follows.